UNITED STATES of America, Plaintiff,

v.

**Bryan MAXWELL, Defendant.**

CR. No. H–89–336.

United States District Court,
S.D. Texas,
Houston Division.

April 11, 1990.

Bert Isaacs, Asst. U.S. Atty., Houston, Tex., for plaintiff.

Thomas J. Bevans, Houston, Tex., for defendant.

## CLARIFICATION OF
## SUPPRESSION ORDER

HUGHES, District Judge.

The government has asked the court to clarify its order of February 13, 1990, which suppressed the evidence seized on September 7 and 8, 1989, from the tire shop operated by Bryan Maxwell. The government contends that the evidence should not be suppressed because it was ultimately seized under the warrant, irrespective of what the agents had done with it in the meantime. The government is wrong.

This is not a case of a marginal violation. This is a case of fourteen officers. These officers had had a wired informant inside the shop talking with the defendant for an hour. These officers had arrested the defendant outside of the shop without incident. These officers, when two of them left to get a warrant, entered the shop and ransacked it, trampling their oaths of office and Maxwell's rights.

The government's position is: A search without a warrant is permissible if a warrant could have been obtained. The existence of probable cause makes the officers act with a "constructive" warrant, or the warrant, when issued, "relates back" to the inception of probable cause. This pedantic nonsense is called the inevitable discovery rule. It is no rule; it is the abolition of a warrant requirement. From now, we will constitutionally assume that that which should have been done was done. We have slipped very far from "Two wrongs do not make a right" toward "The king can do no wrong."

The problem with the warrant requirement is that, through the exclusionary rule, we directly see what our restriction on the power of the government costs. Unfortunately, we cannot similarly see the good it does. For the good is not in the escape of a defendant about to be prosecuted with illegal evidence; the good is in decrease in the unseen, innumerable illegal but unfruit-

ful searches conducted against the population.

Parenthetically, there are those who doubt the efficacy of the exclusionary rule, but no one suggests that the illegally searched citizen has any effective redress. No one doubts that if the police were allowed to make a surprise house-to-house search of any neighborhood in any city that they would discover evidence of some crime in some modest percentage of them. Suppressing the evidence against the few is the only way to protect the many. The people who infuse their justifications of illegality by the government as a drug-war necessity are the same people who truncate the possibility of a remedy at all for injury by the government. No suit against the agencies or the officers on a warrantless but fruitless search would succeed. It would founder on the rocks judicially placed in the course of the citizen, rocks like *immunity* and *policy*.

### 1. *Background*

The government obtained a search warrant at 1:07 a.m. on September 8, 1989, which was based on probable cause. The warrant authorized the search of Maxwell's tire shop and the seizure of this an illicit clandestine laboratory including laboratory equipment, precursor chemicals, phenylacetone, methamphetamine, receipts, and other instrumentation on the illegal manufacture of contraband drugs, like books, formulae, firearms, and currency.

The return of the warrant listed these items which were seized:

A. A 2–liter bottle half full of P2P/methamphetamine;

B. A white plastic 5–gallon bucket three-quarters full of methamphetamine oil;

C. One quart glass Ragu spaghetti sauce jar containing suspected methamphetamine;

D. One plastic clear baggie containing a white powder substance suspected methamphetamine;

E. A brown paper bag containing various filter papers;

F. Various papers, photo album, note pad, telephone book/directory; and

G. One vehicle engine and various automotive parts (suspected stolen property).

Maxwell moved to suppress the evidence seized, on the grounds that the agents had actually seized it during an illegal search conducted before the warrant was issued. After an evidentiary hearing, the court suppressed the evidence. *See* Opinion on Suppression of Evidence, February 13, 1990.

### 2. *Valid Warrant Does Not Cure Illegal Search*

■ The government now contends that, even if the search between the arrest and the arrival of the warrant was illegal, the return of the valid search warrant cured the illegality of the earlier search. The government cannot cure a search and seizure that is illegal by serving a valid search warrant seven hours later.

The government relies on *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), *Segura v. U.S.*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), and *U.S. v. Carrion*, 809 F.2d 1120 (5th Cir.1987). In *Nix*, in response to a police detective's conversation with Williams in which the detective encouraged Williams to tell the police where he had dumped the murder victim's body so it could be recovered before a snow storm and buried by the victim's parents, Williams directed police to the body. The Supreme Court upheld admission of the body and all related evidence including the condition of the body as shown by the autopsy, over Williams's motion to suppress, because due to the location of search teams in the area of the body, the court held that it would have been discovered inevitably even without Williams's incriminating statement.

If the evidence seized in Maxwell's tire shop during the illegal search would inevitably have been discovered because of the imminent issuance of the valid search warrant, that does not cure the violation of Maxwell's Fourth Amendment rights by the agents while awaiting the arrival of the

search warrant. The search of Maxwell's tire shop before the arrival of the warrant was unjustified and completely unnecessary. There was probable cause for the issuance of the warrant. Its issuance was being pursued. The agents had only to maintain their positions outside the tire shop and wait for the warrant's arrival.

■ There was no reason to search the tire shop and seize evidence before the warrant arrived. By doing so, the agents violated the Fourth Amendment; they broke the law. That wrong was completed when it occurred, and the wrong was not cured simply by serving a valid search warrant that arrived later. *Nix* in no way stands for the proposition that gratuitous violations of constitutional rights should be excused merely because the illegally obtained evidence could have been obtained later legally. In *Nix*, the detective did something he should not have done, but his actions in appealing to Williams to disclose the location of the body occurred at the margin of acceptable police behavior. It did not involve interrogation with a rubber hose; it was application of psychological pressure in a case of great emotional intensity—a murdered child at Christmas time. By contrast, this case involves a routine urban amphetamine bust with an egregious violation of known search and seizure rules. Applying *Nix* as broadly as the government advocates would gut the Fourth Amendment and strip the courts of their only means of deterring such constitutional violations.

In *Segura,* law enforcement agents arrested Segura in the lobby of his apartment building, entered his apartment without permission, conducted a limited security check to ensure that no one else was in the apartment who might pose a threat to their safety or to evidence, and then remained in the apartment for 19 hours until a search warrant was issued. 104 S.Ct. at 3383–84. The Supreme Court held that the evidence *discovered during the subsequent search* of the apartment under the valid search warrant was admissible, despite the long period of time which the agents spent in the apartment, because during the 19 hours in the apartment the agents' search was cursory and they remained for that period only to maintain the status quo and their search during the 19–hour period consisted only of a limited security check.

*Segura* does not control the disposition of this motion to suppress for two reasons. First, the agents lacked any justification for entering Maxwell's tire shop before the search warrant arrived. *See* Opinion on Suppression of Evidence, at 4. Second, the evidence demonstrates that the agents did not limit their activities once they entered the tire shop to a cursory security check; instead, they conducted an extensive search of the premises including examining photographs and other papers. *See* Opinion on Suppression of Evidence at 6. The government points particularly to the 19 hours the agents spent in Segura's room while awaiting the arrival of the warrant and argues that the warrantless search of Maxwell's shop should be upheld because agents occupied Maxwell's shop for less than half that time. The time of occupation is not relevant to the legality of the search. The agents in *Segura* did nothing but wait. They did not ransack Segura's apartment. They did not go through his records. They did not take people into his apartment for interrogation. They waited for the search warrant to arrive. The agents in Maxwell's shop should have done the same.

In *Carrion,* agents arrested Solmor at the door of his hotel room. They then entered the room and conducted an immediate search of the bathroom and an adjoining room to make sure there were no other persons on the premises. When Solmor refused consent to a search of his hotel quarters, the agents secured his hotel room and an adjoining room and obtained a valid search warrant which was executed five to six and one-half hours after the initial entry into the hotel room.

The court of appeals upheld the admission of the evidence seized during both the original arrest-security check and the later, more extensive, search executed after the warrant issued. The court found that the agents had probable cause to arrest Solmor and that the limited search that followed

his arrest was based on probable cause and merely preserved the status quo for five to six and one-half hours until the search warrant was obtained.

Here, by contrast, Maxwell was arrested not in his tire shop and not even in the door way, but well outside the tire shop. The agents lacked probable cause to enter the tire shop even for a limited security check. Finally, unlike *Carrion,* the agents did more than merely secure the tire shop and wait for the warrant to arrive. In effect, they executed the warrant before it was issued. *Carrion* does not support the government's position.

■ In *Maryland v. Buie,* —— U.S. ——, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), the Supreme Court recently reduced the requirement of probable cause for a protective sweep to one of reasonable suspicion. The court held that incident to Buie's arrest in his home, law enforcement officers could, as a precautionary matter and without probable cause or reasonable suspicion, search spaces immediately adjacent to the place of arrest from which an attack could be immediately launched. In addition, the court held that officers could expand the search beyond the immediate place of arrest if they have "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at ——, 110 S.Ct. at 1093.

The holding in *Buie* does not change the outcome here. As indicated above, Maxwell was arrested outside the tire shop. Because the agents had the tire shop under surveillance for almost five hours before the arrest and had information from an electronically monitored informant they sent into the tire shop, they lacked even a reasonable suspicion that anyone remained inside who could be a danger to the agents outside. In the language of *Buie,* the agents lacked any articulable facts which, taken together with the rational inferences from those facts, would cause a reasonably prudent officer to believe that the tire shop harbored an individual posing a danger to

those on the arrest scene, which was a parking lot.

■ Further, had the agents any articulable facts, *Buie* allows only "a cursory inspection of the spaces where a person may be found," and the sweep must last "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Id.* at —— ——, 110 S.Ct. at 1094. The agents' "sweep" of the tire shop lasted several hours; they examined papers and photographs and brought a customer who arrived to pick up her car into the shop and interrogated her. *See* Opinion on Suppression of Evidence at 6. It far exceeded the scope allowed by *Buie.*

### 3. *Segregating the Evidence*

■ Alternatively, the government argues that the evidence that was not seized illegally, before the warrant was issued, should be segregated from that seized before the warrant arrived and not be excluded. If any of the evidence returned with the warrant was identified, found, or obtained only after the warrant arrived, and not during or as a result of the illegal search conducted between Maxwell's arrest and the arrival of the warrant, it need not be excluded.

■ The burden is on the government to establish that the evidence it claims was legally seized was, in deed, obtained legally, and not seized during the illegal search. The government presented no evidence that any of the items seized were seized only after the warrant arrived. Absent any evidence to the contrary, the court must assume that all of the items returned with the warrant were actually seized before the warrant arrived and must be excluded.

### 4. *Conclusion*

The agents broke the law when they illegally searched Maxwell's tire shop before the search warrant arrived. This is not an instance of good faith error or mere inadvertence; this is an occasion of twelve agents flouting the limits of their power,

casually disregarding their purpose for existing. The fact that the warrant was being prepared and issued even as the agents violated the Fourth Amendment does not remove the taint of their violation. This court will not read *Nix* to offer law enforcement agents *carte blanche* to violate the Fourth Amendment in those situations where, because probable cause exists for the issuance of a valid warrant, the agents need do nothing more than to wait in safety for the inevitable warrant to arrive. All of the evidence seized during the illegal search of the tire shop is suppressed.